LAND, J.
This is a suit for damages for personal injuries sustained by the plaintiff, a sailor, while working on one of the defendant’s ships lying at her landing in the city of New Orleans.
According to the allegations of the petition, the plaintiff was ordered by the officer in charge to paint the side of a hatch cover on the S. S. Chalmette, and in order to do the work it was necessary to place a plank across the opening of the hatch. The peti *121 tion represents that said officer procured a piece of planking and placed it across said opening, and while petitioner was standing on said plank, doing the work assigned to him, said officer walked out on said plank, and was giving further instructions to petitioner about the work, when the said plank broke, due to its weakness, thereby vprecipitating him and the said officer to the bottom of the hatclf, a distance of about 31 feet, and injuring both of them.
Tbie ¡petition further represented that the officer in charge should have known of the weakness of the plank, and should not have caused its collapse by placing his additional weight thereon.
The petition describes the very serious injuries sustained by the plaintiff, for .which he sued for damages in the sum of $30,000.
The answer admits the alleged employment, and that plaintiff was injured to some extent, but denies that the defendant was guilty of any fault or negligence in the premises, and denies that the plaintiff was injured-in the manner set forth in the petition. The answer then states the defendant's version *of the fact, in substance as follows: The officer in charge directed the plaintiff to place a stage plank (several of which were accessible) across the hatch opening, but, instead of doing so, the plaintiff, in the absence of the deck officer, went to the adjoining wharf and took one of certain planks from a sort of roadway for trucks, and laid it across 'the hatchway. Plaintiff was warned by two laborers in the hold that the plank was cracked and old, and thereupon he procured a similar defective plank from the same place, and put it on top of the first plank, and, in spite of similar warnings from the same persons, went out on the planks and started work. Shortly afterwards plaintiff left the planks and the place of work, leaving his brushes and paint pot. After plaintiff had left his work, the deck officer came up, and as it was necessary that the work of painting should be rapidly completed, the officer went on the planks and started to work. The officer was a much heavier man than the plaintiff, but the planks proved sufficient to bear his weight. While the deck officer was engaged in the work, the plaintiff returned, and, of his own motion, went out on the planking, which broke under the additional weight, and in consequence both of the parties fell into the hold and were hurt.
Defendant charges that the plaintiff was negligent in taking planks from the wharf and using them, instead of one of the stages provided for the purpose; in selecting and using defective planks after special warning; and in adding his own weight to that of the deck officer, standing and working on said planks.
The case was tried before a jury, which found a yerdict in favor of the plaintiff in the sum of $14,200; and from a judgment pursuant to said verdict, the defendant has appealed.
In stating the substance of the evidence, we shall designate the plaintiff as “Connelly,” and the deck officer as “Erickson.”
Connelly was a seaman, about 45 years old at the time of the accident, and his version of the facts is in effect as follows: Erickson went out on the dock, picked up some planks and turned them over, saying they were all right, and directed Connelly to take and put them across the hatchway. He did so, and after he had “sprung on both,” got some paint, and started to paint the side of the cover. Connelly painted for about half an hour, when Erickson came rushing along the plank, which all at once broke, and both of them went down. Erickson said the planks were all right, and Connelly tested them by swinging and walking on them before he started to paint. Erickson said that the regular 'stage planks were on top of the *123 ship’s “house,” and it was too much bother to get them down. No one warned Connelly about the danger of the plank.
Erickson’s version is substantially as follows: He told Connelly to get the stage to put across the hatch to paint the hatch. Erickson then left Connelly, and, on returning about 20 minutes later, found that he had gone off, leaving his paint pot and brush on the stage. Thereupon Erickson went on the stage and commenced painting the hatch, and while so engaged, Connelly returned and came on the stage, which broke, and both of them fell in the hold.
Connelly used two boards for a stage. Erickson did not see Connelly get the boards, but Connelly told him that he intended to use them, and that they were strong enough for one. A laborer between the decks told Erickson that the planks were not very strong, and thereupon Erickson tried them and found them strong enough for one. Connelly was not there at the time.
John Adams testified that, at the time of the accident, he was between decks, “shoving com down the main hatch of the Chalmette,” and the mate (Erickson) was painting over the hatch, and Mr. Berry “hollered out,” “Look out, the planks are broken,” but “he didn’t seem to pay any attention;” then Connelly came from forward and he stepped upon the plank, and they both came down together; the plank was broken, and they fell down the hatch.
Henry Berry, another laborer working near the opening of the hatchway in question, corroborated in the main the testimony of Erickson and of Adams. He stated in substance that he knew the condition of the planks in question, having used the same about the elevator; that when Connelly put the first plank across the hatch, Berry “hollered” to him that the plank was broken and rotten, but Connelly didn’t pay any attention, and so Berry “hollered” again, and thereupon Connelly, after testing the plank, went off, and after a minute or so came back with another plank, which Berry saw was also broken, and so “hollered” to Connelly, who replied, “All right, I see it.”
Berry further stated that after painting a short time Connelly went off on the port side of the ship, and while he was off the second mate came and went on the “run,” whereupon Berry told him to watch out for the “run”; he didn’t think it was very strong, and the mate, after testing the “run,” said, “I guess it will hold me,” and started to paint; that in a few minutes Connelly returned on the starboard side, and got on the “gangway,” and made two or three steps, and fell down. In answer to questions, Berry stated that when the mate went on the planks nobody was there, and Connelly came afterwards on them and they broke down.
Louis Roth, another laborer on the vessel, was also a witness in the ease, and his testimony corroborates Berry’s statements as to the warnings given by the latter to Connelly.
The testimony of the plaintiff differs in material respects from the allegations of his petition, and is contradicted in essential particulars by the witnesses for the defendant. The allegation that the mate placed the defective planks across the hatchway is absolutely disproved, and is not even sustained by the testimony of the plaintiff. The proven fact that the mate undertook to finish the job with the pot of paint and brush which plaintiff had been using, cannot be explained on any other hypothesis than the temporary absence of the plaintiff from the hatchway, as testified by several witnesses for the defense. The truth seems to be that instead of the mate rushing on the planks while the plaintiff was standing thereon, engaged in painting,' the plaintiff himself rushed on them, the moment he discovered that the mate had taken his place, and was doing his work. In so doing the plaintiff was clearly *125 guilty of contributory negligence, as be well knew tbe defective condition of tbe planks, and that they were barely sufficient to support tbe weight of an ordinary man. Plaintiff’s heedlessness and carelessness in subjecting the planks to a double strain was the proximate cause of his own injuries, and of the lesser injuries sustained by the mate of the ship.
This conclusion renders it unnecessary to consider other issues discussed by counsel.
The defendant company offered to plaintiff a liberal ’settlement and permanent employment, which we regret to state was declined.
It is therefore ordered that the verdict and judgment below be annulled, avoid'ed, and reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs.
MONROE, O. J., takes no part.